## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MICHELLE A. VEALE,<br><br>     Debtor. | Chapter 13<br><br>Case No. 21-10418 (BLS) |
| STRATEGIC FUNDING SOURCE, INC.,<br><br>     Plaintiff,<br><br>    v.<br><br>MICHELLE A. VEALE,<br><br>     Defendant. | Adv. Pro. No. 21-50486 (BLS)<br>(Re: D.I. 6) |

Michael Busenkell, Esquire
Amy D. Brown, Esquire
Gellert Scali Busenkell & Brown, LLC
1201 N. Orange Street, Suite 300
Wilmington, DE 19801

*Counsel for Strategic Funding Source, Inc.*

Peter K. Schaeffer, Jr., Esquire
1073 South Governors Avenue
Dover, DE 19904

*Counsel for Debtor*

### OPINION[1]

  The Debtor, Michelle A. Veale, personally guaranteed a high interest loan made to the business entity she owned prior to the business's Chapter 11 bankruptcy filing. After the Debtor filed her own Chapter 13 case, the lender, Strategic Funding Source, Inc. ("SFS"), filed an adversary complaint (the

---

[1] The Court has jurisdiction to decide this adversary proceeding pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

"Complaint") asserting that Ms. Veale's personal guarantee of the business debt is nondischargeable under various subsections of Bankruptcy Code § 523.

Before the Court is the Debtor's Motion to Dismiss SFS's complaint under Fed.R.Bankr.P. 7012.[2]  SFS filed a Memorandum in Opposition to the Motion to Dismiss[3] and the Debtor filed a Reply in Support of the Motion to Dismiss.[4]  The Court heard oral argument on the Motion to Dismiss on October 14, 2021. The matter is ripe for disposition.

For the reasons set forth herein, the Court concludes that the Complaint fails to allege facts that support plausible claims for nondischargeability under § 523(a)(2), (4) or (6). The Debtor's Motion to Dismiss will be granted.

ALLEGED FACTS

The Complaint alleges the following facts:

1.    On or about April 11, 2017, the Debtor executed a loan agreement with SFS in her capacity as owner of Retro Home Health Care Services, Inc. (the "Business"), as Borrower, and in her individual capacity, as Guarantor.[5]

2.    The Loan Agreement provided that SFS would provide the Business with a loan in the principal amount of $230,000.00, and the Business promised to pay SFS the "Repayment Amount" of $319,700.00 (consisting of principal in the amount of $230,000.00 and interest in the amount of $89,700.00)  in 52 *weekly*

---

[2] Adv. D.I. 6.
[3] Adv. D.I. 12.
[4] Adv. D.I. 14.
[5] Compl. ¶ 12 and Ex. A (the "Loan Agreement").

payments of $6,152.80 each, reflecting an effective interest rate of approximately 39 percent.[6]

3.      The Debtor personally guaranteed the Business's payment and performance under the Loan Agreement.[7]

4.      Prior to finalizing the Loan Agreement and advancing the funds, SFS recorded a telephone call with the Debtor in which SFS asked the following questions:

Q:      Have you been planning to file or do you know of any reason to believe that your business will need to file for bankruptcy protection in the foreseeable future?
A:      No, no I don't.

Q:      Do you currently have a balance with any other merchant cash advance provider?
A:       No.

5.      On or about April 13, 2017, SFS advanced the loan amount, less fees (the "Funds").[8]

6.       Pursuant to instructions by the Business and the Debtor, SFS paid $101,327.81 of the Funds directly to Provider Web Capital to satisfy a balance owed by the Business and the Debtor.[9]

7.      From April 17, 2017 through May 15, 2017, SFS received five payments from the Business's bank account totaling $30,764.00.[10]

---

[6] Compl. ¶ 14 and Ex. A. *See also* Motion to Dismiss at ¶ 2.
[7] Compl. ¶ 13 and Ex. A.
[8] Compl. ¶ 15.
[9] Compl. ¶ 16.
[10] Compl. ¶ 17.

8.  On or about May 22, 2017 and May 30, 2017, SFS attempted to draft the next two payments from the Business's bank account, but both payments were rejected and failed to clear.

9.  From May 25, 2017 through July 14, 2017, SFS made numerous attempts to contact the Business and the Debtor to address the "stop payment" on the account and the outstanding balance on the Loan, but neither the Business nor the Debtor returned SFS's calls.[11]

10. On July 17, 2017, the Business filed a Chapter 11 bankruptcy case (the "Business Bankruptcy") in the United States Bankruptcy Court for the Southern District of Indiana (the "Indiana Bankruptcy Court").[12]

11. The Business paid SFS nine monthly adequate protection payments of $1,000.00 each pursuant to the Final Order Authorizing Use of Cash Collateral entered by the Indiana Bankruptcy Court.[13]

12. On August 2, 2018, the Business's Chapter 11 Plan was confirmed and on November 8, 2018, SFS received payment of $5,099.41.[14]

13. The Loan Agreement required the entire balance owed to SFS to be paid by April 2018.[15]   When the Debtor failed to make any payments under the personal guarantee, on May 18, 2018, SFS filed a complaint against the Debtor

---

[11] Compl. ¶ 20.
[12] Compl. ¶ 21.
[13] Compl. ¶ 22.
[14] Compl. ¶ 23.
[15] Compl. ¶ 25.

in the Circuit Court of the County of Hanover, Virginia (the "Virginia State Court") alleging claims of breach of contract and fraud.[16]

14.    The Debtor failed to appear in the Virginia State Court and SFS obtained a default judgment against the Debtor on July 17, 2018 for more than $300,000.00, including principal of $230,000.00, a default fee of $2,500.00, unpaid interest of $51,486.00, attorney's fees of $16,500.00, plus interest at the judgment rate of 6% per annum and any and all court costs.[17]

15.    On February 18, 2021, the Debtor filed a Chapter 13 bankruptcy case before this Court.

## MOTION TO DISMISS STANDARD

When reviewing a motion to dismiss, the court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[18]  In *Twombly*, the Supreme Court instructed that a pleading must nudge claims "across the line from conceivable to plausible."[19] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20]

---

[16] Compl. ¶ 26 and Ex. B.

[17] Compl. ¶¶ 27-28 and Ex. C.

[18] *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[20] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Third Circuit follows a three-step process to determine the sufficiency of a complaint:

> First, the court must "take note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[21]

The movant carries the burden of showing that the dismissal is appropriate.[22]

<u>DISCUSSION</u>

SFS's Complaint contains four counts, each seeking a declaration that the Debtor's guarantee is nondischargeable pursuant to various subsections of Bankruptcy Code § 523. Generally, SFS alleges that the Debtor made the following misrepresentations at the time the loan was made (the "Alleged Misrepresentations"):

(1)   the Business and the Debtor were not insolvent;

(2)   the Business and the Debtor's financial conditions were such that the Business would not need to file bankruptcy in the "foreseeable future;"

(3)   the assets subject to the security agreement were free from any liens, security interests or other encumbrances that would be superior or adverse to SFS;

(4)   the Business and the Debtor would fulfill the obligations under the Loan Agreement, by allowing SFS to draft the agreed payments from one designated bank account and provide SFS with irrevocable access to the account for repayment;

---

[21] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

[22] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).

(5)     the Business and Debtor would deposit all receivables into the bank account;

(6)     the Business's financial information was accurately reflected in documents and information produced to SFS;

(7)     the Business intended to use the funding for business purposes rather than personal, family or household purposes;

(8)     the Debtor intended to guarantee full and prompt performance of all obligations;

(9)     neither the Business nor the Debtor were in arrears with any of their creditors;

(10)    the Business was in good standing under all applicable laws under which the Business operates; and

(11)    neither the Business nor the Debtor had or would have an outstanding balance with any other merchant cash advance provider.

The Debtor argues that the facts alleged in the adversary Complaint do not support claims for fraud or other grounds that would prevent the discharge of her guarantee obligations. She claims that the facts establish only that the small business she owned was struggling and took on the high interest loan from SFS, which she guaranteed. The Business made payments on the loan, but then defaulted and filed a chapter 11 bankruptcy case. The Debtor contends that the facts here are no different than other business lending transactions in which an entity cannot pay and seeks protection under the Bankruptcy Code.

"Dischargeability exceptions are narrowly construed."[23] Courts have recognized that the reasons for denying a discharge must be real and substantial, not merely technical and conjectural.[24]  "A narrow construction is warranted given that one of the fundamental policies underlying the Bankruptcy Code is to permit honest debtors to reorder their financial affairs and obtain a 'fresh start,' unburdened by the weight of preexisting debt."[25]  A creditor objecting to the discharge of debts bears the burden of proof.[26]

1.  Count 1 - Nondischargeability of debt pursuant to § 523(a)(2)(A)

Section 523(a)(2)(A) provides that an individual's debt will not be discharged to the extent that the debt was "obtained by false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[27]  To establish nondischargeability under this section, a creditor must demonstrate that:

    (i)      The debtor made misrepresentations or perpetuated fraud;

    (ii)     The debtor knew at the time that the representations were false;

    (iii)    The debtor made the misrepresentations with the intention and purpose of deceiving the creditor;

---

[23] *Balascio v. Leitzke (In re Leitzke)*, Adv. No. 14-50017, 2014 WL 3583706, *3 (Bankr. D. Del. July 18, 2014) (citing *In re Pearl*, 502 B.R. 429, 439 (Bankr. E.D. Pa. 2013)).

[24] *Kapitus Serv., Inc. v. Polk (In re Polk)*, 2020 WL 762215, *2 (Bankr. M. D. Ga. Feb. 14, 2020) (citing *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987) (internal punctuation omitted)).

[25] *Leitzke*, 2014 WL 3583706, *3.

[26] *Id.*

[27] 11 U.S.C. § 523(a)(2)(A).  "Although the terms 'false pretenses,' 'false representation,' and 'actual fraud' refer to different concepts, they are closely related and each requires a plaintiff to demonstrate 'proof of false or deceptive conduct, fraudulent intent, and justifiable reliance.'"  *Holden v. Altieri (In re Altieri)*, Adv. No. 11-1196, 2012 WL 3595298, *2 (Bankr. D. N.J. Aug. 20, 2012) (citing *Iwaszczenko v. Neale (In re Neale)*, 440 B.R. 510, 521 (W.D. Wis. 2010)).

(iv)    The creditor justifiably relied on such misrepresentations; and

(v)    The creditor sustained loss and damages as a proximate result of the misrepresentations having been made.[28]

When pleading fraud, the Complaint must allege the particularity of the circumstances constituting the fraud – "the who, what, when, where, and how of the events at issue."[29]

Although the term "Debtor" is sprinkled throughout the Alleged Misrepresentations, the Court notes that only four of those Alleged Misrepresentations actually relate to the Debtor's guarantee debt:  that is, (1)  the Debtor was not insolvent; (8) the Debtor intended to guarantee full and prompt performance of all obligations; (9) the Debtor was not in arrears with any of her creditors, and (11) the Debtor did not have an outstanding balance with any other merchant cash advance provider.  The remaining Alleged Misrepresentations are specific to the Business.

Section 523(a)(2)(A) does not apply to statements about a debtor's financial condition (which are covered by § 523(a)(2)(B)), so the issue before the Court under Count I is limited to Alleged Misrepresentation (8):  that is, whether the facts alleged in the Complaint support a plausible claim that the Debtor falsely represented her intent to guarantee the Business's obligations. The Complaint

---

[28] *Leitzke*, 2014 WL 3583706, *3 (citing *Webber v. Giarratano (In re Giarratano)*, 299 B.R. 328, 334 (Bankr. D. Del. 2003)).

[29] *Charles Kapish v. April Cruz-Brewer (In re Cruz-Brewer)*, 609 B.R. 1, 10 (Bankr. M. D. Pa. 2019) (citing *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). Fed.R.Civ.P. 7009(b) made applicable hereto by Fed.R.Bankr.P. 7009.

asserts that the Debtor failed to make any payments to SFS after the Debtor defaulted and, further, the Debtor failed to appear in the Virginia State Court action against her, which resulted in a default judgment.[30]  However, allegations of nonpayment, without more, cannot support a claim that the Debtor knowingly made a false representation *at the time she guaranteed the loan*.[31]

"A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions."[32]  In a case similar to the one at bar, the Bankruptcy Court for the Middle District of Georgia decided:

> The test may be stated as follows. If, at the time he made his promise, the debtor did not *intend to perform*, then he made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met). If he did so intend at the time he made his promise, but subsequently decided that he could not or would not perform, then his initial representation was not false when made.[33]

There are no facts alleged in the Complaint to support an inference that the Debtor falsely represented her intent to guarantee the loan from SFS at the time the debt was incurred.

Other Alleged Misrepresentations relate to the Business obligations, rather than the guarantee, and are not directly applicable to the nondischargeability of the Debtor's guarantee debt. However, SFS argues that the Debtor (as owner)

---

[30] Compl. ¶ ¶ 24-28.

[31] *Webber v. Giarratano (In re Giarratano)*, 299 B.R. 328, (Bankr. D. Del 2003) (Nonpayment of debt is insufficient to establish that, at the time the loan was made, the debtor did not intend to repay it).

[32] *Kapitus Servicing, Inc. v. Polk (In re Polk)*, 2020 WL 762215, *7 (Bankr. M. D. Ga. Feb. 14, 2020) (quoting 4 COLLIERS ON BANKRUPTCY ¶ 523.08[1][d], at 523-43).

[33] *Polk*, 2020 WL 762215 (citations omitted) (emphasis in original).

wrongfully obtained the Business loan by false representations. For completeness, the Court reviews the other Alleged Misrepresentations and concludes that they also do not support claims under § 523(a)(2)(A).

Alleged Misrepresentations (4) and (5) assert that the Business and the Debtor falsely represented that SFS  would have "irrevocable access" to a designated bank account to collect repayments, and that the Business's receivables would be deposited into that account. The Complaint alleges that SFS collected five payments from the Business's bank account, but thereafter was blocked from the account. Without more, the allegations of nonpayment fail to plausibly support a claim of misrepresentation when the loan was made.

Further, that are no factual allegations to plausibly support a claim that the Debtor (or Business) misrepresented the intent to use the Funds for anything other than Business purposes [Alleged Misrepresentation (7)] or that the Business was not in good standing [Alleged Misrepresentation (8)].

A plaintiff must show that the grounds of his entitlement to relief amount to more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.[34]  Count I of SFS's Complaint does not meet the plausibility standard for claims under § 523(a)(2)(A).


2.  <u>Count 2 – Nondischargeability of debt pursuant to § 523(a)(2)(B)</u>

Section 523(a)(2)(B) provides:

---

[34] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

(a) A discharge under . . . § 1328(b) of this title does not discharge an individual debtor from any debt –

. . . .

(2) for money, property, services or an extension, renewal, or refinancing of credit, the extent obtained by - -

. . . .

(B) use of a statement in writing - -

    (i)   that is materially false;

    (ii)  respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive.[35]

"The United States Supreme Court has interpreted the second element - - a statement respecting the debtor's financial condition - - very broadly, encompassing even a statement about a single asset."[36]

SFS argues that the Complaint adequately alleges that it relied to its detriment on statements by the Debtor during a funding telephone call. Because the statements - - about the Business or Debtor's foreseeable need to file bankruptcy or balances with other merchant cash advance providers - - are statements about the Business or Debtor's financial condition, those statements must be in writing to support a nondischargeability claim under § 523(a)(2)(B).[37]  As recognized by the Supreme Court:

The text of § 523(a)(2) plainly heightens the bar to discharge when the fraud at issue was effectuated via a "statement respecting the debtor's financial condition."  The heightened requirements, moreover, are not a shield for dishonest debtors. Rather, they reflect Congress' effort to

---

[35] 11 U.S.C. § 523(a)(2)(B).

[36] *Kapitus Servicing, Inc. v. Friedlander (In re Friedlander)*, 2021 WL 3889786, *7 (Bankr. N.D. Ohio Aug. 27, 2021) (citing *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1764, 201 L.Ed.2d 102 (2018)).

[37] *Polk*, 2020 WL 762215, *9 ("[A]ny oral representations by Debtor on the phone calls about debts of the company or his personal debts could not be challenged under § 523(a)(1)(A) but would have to be in writing and challenged under § 523(a)(2)(B).").

balance the potential misuse of such statements by both debtors and creditors. As the Court has explained previously:

> The House Report on the [Bankruptcy Reform Act of 1978] suggests that Congress wanted to moderate the burden on individuals who submitted false financial statements, not because lies about financial condition are less blameworthy than others, but because the relative equities might be affected by practices of consumer finance companies, which sometimes have encouraged such falsity by their borrowers for the very purpose of insulating their own claims from discharge.[38]

Other Alleged Misrepresentations about the Debtor's or Business's financial condition based on the pre-printed loan agreement appear to be "technical and conjectural"[39] rather than substantial reasons for asserting nondischargeability because the Complaint lacks factual allegations showing that any of the statements were made with an "intent to deceive."[40]  In particular:

- Alleged Misrepresentations (1) and (2), based on Section 2.7 of the Loan Agreement, assert that the Debtor falsely represented that the Business and the Debtor were not insolvent and that neither anticipated filing for bankruptcy. SFS asserts that the timing of the Business's default (one month after receiving the loan), and the Business's bankruptcy filing (three months after receiving the loan), create an inference that the Debtor's statements in Section 2.7 were false. However, the timing alone, without more facts, is insufficient to

---

[38] *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1763 (2018) (quoting *Field v. Mans*, 516 U.S. 59, 76-77, 116 S. Ct. 437, 133 L.Ed.2d 351 (1995) (footnote omitted)).
[39] *See* n. 24, *supra*.
[40] 11 U.S.C. § 523(a)(2)(B)(iv).

raise a plausible inference of an intent not to pay when the agreement

was signed.[41]  More importantly, the Complaint fails to plead any facts

to support an inference that the Debtor made written

misrepresentations about her individual financial condition or

intended to deceive SFS in connection with the guarantee. The Debtor

filed Chapter 13 almost four years after the guarantee was given.

These Alleged Misrepresentations cannot support a plausible claim for

nondischargeability of the personal guarantee under § 523(a)(2)(B).

- Alleged Misrepresentation (3) claims that the Debtor falsely

   represented in Section 2.9 of the Loan Agreement that the assets

   subject to the security agreement were free from any liens, security

   interests or other encumbrances. Of particular relevance here, there

   are no factual allegations regarding any misrepresentations about

   liens against assets of the Debtor in connection with the Debtor's

   guarantee. The Debtor notes that the Security Agreement's description

   of "additional collateral" to secure the guarantee is blank. Moreover,

   the Debtor points out that the complete language in Section 2.9 of the

   Loan Agreement states that the assets of the Borrower (the Business)

   had no liens or encumbrances "*that may be inconsistent with the*

---

[41] *McGinnis v. Fatone (In re Fatone)*, 2013 WL 5798999, *3 (Bankr. E.D. N.C. Oct. 25, 2013) (Court decided that a debtor's chapter 13 filing one month after participating in a mediation and signing a settlement agreement to pay debts did not support a plausible claim of an intent to deceive at the time the Debtor entered into the settlement agreement).

*transactions contemplated with or adverse to the interests of [SFS]."*[42]
The Debtor argues that SFS could not have reasonably relied upon pre-
printed statements about priority without running a simple lien search
on the Business.[43] The Debtor further asserts the facts alleged in the
Complaint show that SFS received a lien, which entitled SFS to
adequate protection payments in the Business's Chapter 11 case.  At
bottom, nothing in the Complaint supports a plausible claim that the
Debtor intended to deceive SFS at the time she signed the Loan
Agreement. Accordingly, Alleged Misrepresentation (3) also fails to
state a plausible claim under § 523(a)(2)(B).

- Alleged Misrepresentation (6) claims that the Debtor falsely
  represented that the Business's financial information was accurately
  reflected on the documents and information provided to SFS. The
  Complaint alleges that the Business filed bankruptcy due to "a large
  repayment it owed to Medicaid, and a large assessment from the
  Department of  Labor ("DOL") for unpaid overtime."[44]  The Complaint
  also alleges that the Medicare and DOL debts were foreseeable to the
  Business and the Debtor, and, therefore, support a claim based on a

---

[42] Compl. ¶ 39 (emphasis added).

[43] *See Friedlander*, 2021 WL 3889786, *9 (quoting *BancBoston Mortg. Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1560 (6th Cir. 1992) ("Among the circumstances that might affect the reasonableness of a creditor's reliance are: … (4) whether there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.")).

[44] Compl. ¶44.

material nondisclosure.[45]  Nothing in this Alleged Misrepresentation is related to the Debtor's individual financial condition or her debt under the guarantee and, therefore, does not support a plausible claim for nondischargeability of the guarantee debt under § 523(a)(2)(B).  But even assuming this Alleged Misrepresentation about the Business could be deemed relevant to the Debtor's discharge, the conclusory statements fail to support a claim that the Debtor knowingly omitted relevant financial information or had an intent to deceive SFS at the time the loan was incurred.[46]

- Alleged Misrepresentations (9) and (11) assert that the Debtor falsely represented that neither the Business nor the Debtor were in arrears with any creditor and that neither would have an outstanding balance with any other merchant cash advance provider. Section 2.8 of the Loan agreement provides that the Borrower (the Business) would not enter into any financing agreement without the written permission of SFS. The language does not address the Debtor's individual financial condition or the guarantee. Further, the Debtor argues that SFS could

---

[45] Compl. ¶ 45. SFS relies upon information in the Business's bankruptcy schedules and statement of financial affairs to support its allegation that the Medicaid and DOL debts were foreseeable.  *Id.*

[46] The allegations are distinct from the facts of *Veritex Cmty. Bank v. Osborne (In re Osborne)*, 951 F.3d 691, (5th Cir. 2020) (Two days before his personal loan closed, the debtor signed a personal guarantee for a $1 million medical equipment lease for his company, but the debtor failed to update his personal financial statement for the personal loan to include his obligation under the business guarantee. Further, after the business defaulted and the debtor entered into a settlement agreement to pay the guarantee debt, the debtor failed to report these developments to his personal lender when the lender was considering renewal of the personal loan).

not reasonably have relied upon this statement about the Business at the time the debt was incurred since SFS followed the Business's request to pay part of the SFS funding directly to another creditor. The facts in the Complaint do not support any plausible claims under § 523(a)(2)(B) based on Alleges Misrepresentations (9) and (11).

3.  Count 3 – Nondischargeability of debt pursuant to § 523(a)(6)

Section 523(a)(6) provides that an individual debtor will not receive a discharge under § 1328(b) from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[47]  "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[48]

A knowing breach of contract will not ordinarily rise to the level of "willful and malicious."[49]  As the Court of Appeals for the Ninth Circuit has noted:

> Historically, injuries resulting from breaches of contract are treated very differently from injuries resulting from torts. In contract law, "[t]he motive for the breach commonly is immaterial in an action on the contract." *Globe Refining Co. v. Landa Cotton Oil Co.,* 190 U.S. 540, 547, 23 S.Ct. 754, 47 L.Ed. 1171 (1903) (Holmes, J.). The concept of "efficient breach" is built into our system of contracts, with the understanding that people will sometimes intentionally break their contracts for no other reason than that it benefits them financially  The definition of

---

[47] 11 U.S.C. § 523(a)(2)(6).

[48] *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998) (emphasis in original) (holding that a medical malpractice judgment, attributable to negligent or reckless conduct, is not excepted from discharge under the "willful and malicious injury" language of § 523(a)(2)(6)).

[49] *Norm Gershman's Things to Wear, Inc. v. Peterson (In re Peterson)*, 332 B.R. 678, 682 (Bankr. D. Del 2005) (citing *Kawaauhau*, 523 U.S. at 62)). *See also GMAC Inc. v. Coley (In re Coley)*, 433 B.R. 476, 499 (Bankr. E. D. Pa. 2010) ("An intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct." (quoting *Mitsubishi Motor Sales of Caribbean, Inc. v. Seda Ortiz*, 418 B.R. 11, 25 (D. P.R. 2009)).

intent to injure as the commission of an act "substantially certain" to cause harm was born from *tort* principles, not contract law principles. . . . .

Conflating tortious conduct with intent to injure also conflicts with core principles of bankruptcy law and its underlying legislative scheme. A fundamental policy of bankruptcy law is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (citation omitted). Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to "start afresh."[50]

"A breach of contract is not 'willful and malicious conduct' under § 523(a)(6) unless accompanied by conduct that would give rise to a tort action under state law."[51]

SFS argues that the Complaint alleges a cause for willful and malicious injury because the Debtor stopped payments to SFS, causing a substantial certainty of injury. The Complaint also alleges that, at the time the loan was negotiated, the Debtor never intended to perform the obligations under the Loan Agreement or the guarantee. Here, the alleged facts complain of only an intentional breach of contract. Without more, the allegations cannot support a plausible claim for nondischargeability under § 523(a)(6).

---

[50] *Lockerby v. Sierra*, 535 F.3d 1038, 1042 (9th Cir. 2008) (deciding that an attorney's intentional breach of a settlement agreement of the former client's malpractice claims involved "ordinary debt" and was not tortious under Arizona state law and, therefore, was not "willful and malicious" under § 523(a)(6)).

[51] *Lockerby*, 535 F.3d at 1044.

4.  <u>Count 4 – Nondischargeability of debt pursuant to § 523(a)(4).</u>

SFS also seeks relief under § 523(a)(4) which provides that a discharge under § 1328(b) will not apply to any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."[52]

Section 523(a)(4) first refers to debts arising from "fraud or defalcation while acting in a fiduciary capacity." "The term 'fiduciary capacity' under § 523(a)(4) generally has a narrower meaning in bankruptcy than its traditional common law definition"[53] . . . and 'cannot be based on a constructive or implied trust.'"[54]  "[T]he defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor."[55]  "Defalcation then occurs through the misappropriation or failure to properly account for those trust funds."[56]

"A simple contractual relationship does not, without more, create a fiduciary relationship."[57] "[C]ommercial terms, like the payment of fixed interest for the use of funds, normally indicate a debtor-creditor relationship, and not a trust relationship."[58]  In this matter, the Complaint alleges facts consistent with a commercial relationship, not a fiduciary relationship.

---

[52] 11 U.S.C. § 523(a)(4).

[53] *Dastinot v. Kamara (In re Kamara)*, 2012 WL 5879718, *6 (Bankr. D. Del. Nov. 20, 2012) (citing *Int'l Fidelity Ins. Co. v. Marques*, 358 B.R. 188, 194 (Bankr. E. D. Pa. 2006)).

[54] *Kamara*, 2012 WL 5879718, *6 (citing *Hickman v. Wimbrow (In re Wimbrow)*, 2012 WL 3069527, *2 (Bankr. D. Del. Jul. 27, 2012)).

[55] *Bd. Of Trs. Of the Ohio Carpenters' Pension Fund v. Bucci*, 493 F.3d 635, 639-40 (6th Cir. 2007) (quoting *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997)).

[56] *Garver*, 116 F.3d at 180.

[57] *Kamara*, 2012 WL 5879718, *6.

[58] *Id.*

SFS argues that the Complaint adequately alleges a fiduciary relationship by asserting that the Business was insolvent when the loan was made and, therefore, the Debtor (as the Business's officer and director) had a fiduciary duty to the corporation's creditors, including SFS.[59] "[O]fficers and directors of an insolvent corporation are said to hold the remaining corporate assets in trust for the benefit of its general creditors."[60] "The creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties."[61] However, the fiduciary duty owed to creditors when a corporation is insolvent cannot support a claim under § 523(a)(4) because it does not create an express or technical trust relationship for the benefit of a particular creditor's direct claims.

Section 523(a)(4) also provides that claims based on embezzlement or larceny are nondischargeable. "Under federal common law, 'embezzlement' is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'"[62] To prevail on a § 523(a)(4) claim for embezzlement, a creditor must prove that (i) he entrusted property to the debtor, (ii)

---

[59] The complaint alleges that New York law applies because the Business is a New York corporation.

[60] *RSL Comm'n PLC v. Bildirici*, 649 F.Supp.2d 184, 202 (S.D.N.Y. 2009) (quoting *Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541, 549, 708 N.Y.S.2d 26, 729 N.E.2d 63 (N.Y. 2000) ("The application of the trust fund doctrine in New York customarily has been for the purpose of imposing liability on corporate directors or transferees for wrongful dissipation of assets of an insolvent corporation, in actions later brought by court-appointed receivers, trustees in bankruptcy or judgment creditors. . . . the general rule [is] that a simple contract creditor may not invoke the doctrine to reach transferred assets before exhausting legal remedies by obtaining judgment on the debt and having execution returned unsatisfied. *Id.* at 550.)

[61] *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 101–02 (Del.Supr. 2007)(discussing Delaware law). !

[62] *Polk*, 2020 WL 762215, *10 (quoting *Fernandez v. Havana Gardens LLC*, 562 Fed. App'x 854, 856 (11th Cir. 2014)).

the debtor appropriated the property for a use other than that for which it was entrusted, and (iii) the circumstances indicate fraud. [63]

"Larceny is the wrongful taking and carrying away of the property of another with intent to convert such property to the taker's own use *without* the consent of the owner."[64]  Both larceny and embezzlement involve the fraudulent appropriation of property but differ in the timing. "Larceny applies when a debtor unlawfully appropriates property at the outset, whereas embezzlement applies when a debtor unlawfully appropriates property after it has been entrusted to the debtor's care."[65]

SFS argues that its claim is nondischargeable under § 523(a)(4) because the Debtor took the funds with no intent to repay them or used the funds for personal expenses, rather than the Business's operations. These allegations are conclusory and offer no facts to support them.[66]  The facts allege that the transaction between SFS and the Debtor was a business loan. There is no plausible claim for nondischargeability based on embezzlement because the Complaint does not allege that SFS entrusted its property to the Debtor.[67]   At the time SFS funded the loan, the loan proceeds ceased being SFS's property and became the Business's

---

[63] *Polk*, 2020 WL 762215, 10 (quoting *Kern v. Taylor (In re Taylor)*, 551 B.R. 506, 521 (Bankr. M.D. Ala. 2016) (internal quotation marks omitted)).

[64] *Swift Fin., LLC v. Opoku (In re Opoku)*, 2020 WL 7133350, *18 (Bankr. E.D. Tex. Dec. 2, 2020) (emphasis in original).

[65] *Id.* at *19 (citing *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 190 (Bankr. E.D. Tex. 2015)).

[66] *See, e.g., JP Morgan Chase Bank, NA v Algire (In re Algire)*, 430 B.R. 817, 823 (Bankr. S.D. Ohio 2010) (alleging that the debtor wrongfully used the business's loan proceeds to purchase a roof for his house, a hot tub, other items, and to pay off a personal line of credit; however, despite the plaintiff's detailed factual allegations, the Court dismissed the §523(a)(4) embezzlement claim because funding a loan was not entrustment of plaintiff's property to defendant).

[67] *Id.; Opoku*, 2020 WL 7133350, *18.

property.[68] The Complaint also does not support a plausible claim for larceny since the Debtor did not take SFS's property without its consent.[69]

For these reasons, the Complaint fails to allege sufficient facts to support a plausible claim for nondischargeability under § 523(a)(4).

## CONCLUSION

For the reasons set forth herein, the Complaint fails to allege facts to support a plausible claim for nondischargeability of the Debtor's personal guarantee under § 523(a)(2), (4) or (6). The Dismissal Motion will be granted, with prejudice.[70] An appropriate order follows.

BY THE COURT:

Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:  November 30, 2021
        Wilmington, Delaware

---

[68] *Algire*, 430 B.R. at 822 (citing *CNH Capital America, LLC v. Bangle (In re Bangle)*, 2010 WL 1903752, *3 (Bankr. W.D. Tex. May 10, 2010)).

[69] *See, e.g., Opoku*, 2020 WL 7133350, *18.

[70] Given the high bar for asserting plausible nondischargeability claims, as discussed *supra*, the Court concludes that dismissal without leave to amend is warranted here. The factual allegations evince a business loan that went sour, nothing more.